RICHMOND COAL CO. v. COMMERCIAL UNION ASSUR. CO., LIMITED, OF LONDON, ENGLAND.

(Circuit Court, N. D. California. January 24, 1908.)

No. 14,199.

1. INSURANCE—CONSTRUCTION AND OPERATION OF CONTRACT—LIABILITIES INSURED AGAINST—EARTHQUAKE CLAUSE IN FIRE POLICY.

A provision in a fire insurance policy exempting the insurer from liability for any loss or damage by fire caused directly or indirectly by earthquake is valid and enforceable.

2. SAME—ACTION ON POLICY—DEFENSES—BURDEN AND SUFFICIENCY OF PROOF.

In an action on such a policy, the burden rests on the defendant to bring the case within the exception by a preponderance of evidence that the loss was proximately, either directly or indirectly, caused by earthquake—that is, that if the loss was directly due to fire such fire would not have occurred but for an earthquake—and it is not sufficient to prove that an earthquake produced conditions but for which the loss would not have occurred if it did not directly or indirectly cause the fire; but, if it did so cause the fire, it is immaterial that the fire started in other property if it spread continuously to and burned the property insured.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1660.]

3. WORDS AND PHRASES—"PROXIMATE CAUSE."

By "proximate cause" is meant a cause which naturally, by continuous sequence, unbroken by a new cause, produces a result; it need not necessarily be the nearest or immediate cause which may be merely an instrument of the dominant or efficient cause.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5758-5769; vol. 8, p. 7771.]

At Law.  Charge to jury.

E. B. Young and L. A. Redman, for plaintiff.

T. C. Van Ness and H. B. M. Miller, for defendant.

VAN FLEET, District Judge (orally).  The time has now arrived when it becomes my duty to submit to you the principles of law that must govern you in your consideration of the evidence in this case for the purpose of reaching a verdict, and I shall ask your very careful attention while I do so.  And when I have submitted to you the law it will be your duty to follow it.  No matter whether some of

you may entertain an idea that such should not be the law, in any particular, nevertheless, for the purposes of this case, you are obligated by your oath to observe that which is submitted to you by the court as the controlling principles to govern you in your consideration of the evidence.

In this action the plaintiff seeks to recover from the defendant insurance company the sum of $19,955.84, under a policy of insurance issued by the defendant to the plaintiff on certain property described therein, which the contract recites was a quantity of coal situated on the northwest corner of Howard and Spear streets in the city and county of San Francisco. Under the admissions made by the defendant in open court there is left but one main issue of fact for your consideration in order to arrive at a verdict. The defendant admits that the property insured was destroyed by fire, but it pleads as a defense that under the policy sued upon it was stipulated and agreed between the parties that the defendant should not be liable for a loss to plaintiff caused directly or indirectly by earthquake; and it is alleged that the fire which destroyed the plaintiff's property was caused by earthquake, within the terms and meaning of the policy, and that but for such earthquake neither said fire nor the loss would have occurred, and for that reason that the defendant is not liable to the plaintiff on the policy in suit. The finding you shall make on the issue involved in this defense will therefore be determinative of your verdict, since if the plaintiff's loss resulted directly or indirectly from the effect of an earthquake the defendant is, by the terms of its policy, exempt from liability; while on the other hand, if the defendant has failed to sustain its defense in the manner hereinafter stated, your verdict must, under the admissions made, be for the plaintiff.

As alleged by the defendant in its defense, by the terms of the policy in suit, the defendant did insure the plaintiff on the property described therein against all direct loss or damage by fire, but excepted from the operation of the policy any loss or damage by fire which might be caused directly or indirectly by earthquake. This exception from liability for loss that should be thus caused was a perfectly valid and legal one, which the defendant had a right to provide for in its contract, and the plaintiff in accepting the policy signified its assent to that provision equally with the other terms set forth therein, and the defendant therefore has a right to have that condition enforced as the facts may warrant. Policies of insurance are contracts, and, like other contracts, must be construed according to the sense and meaning of the terms used by the parties, and those terms are to be taken and understood in their plain, ordinary, and popular sense. The defendant has admitted that the plaintiff's loss resulted directly or immediately from fire, the peril insured against; but it contends that the proximate or efficient cause of the loss was earthquake, notwithstanding the insured property was burned. Upon this issue I instruct you that if you find from the evidence that the loss was proximately, either directly or indirectly, caused by earthquake, your verdict, notwithstanding the insured property was destroyed by fire, should be in favor of the defendant; but if, upon

the other hand, you find from the evidence that fire and not earth-quake was the proximate or efficient as well as the direct cause of the loss, your verdict should be for the plaintiff. By proximate cause is meant a cause which naturally, by continuous sequence, unbroken by a new cause, produces a result. The proximate cause of an effect is not necessarily the cause which is nearest to—that is, immediately or directly produces—the effect; but it is the efficient dominant factor in the production or bringing about of the effect. The nearest or immediate cause of an effect may be merely an instrument of the dominant or efficient cause; and if, upon the evidence in this case, you find that the fire which destroyed the insured property was a mere instrument of an earthquake, and that the loss by necessary or natural sequence was due to the earthquake, your verdict should be for the defendant notwithstanding the property was burned. If, however, you find from the evidence that plaintiff's loss was directly or proximately caused by fire, which was the peril insured against, and that earthquake was not directly or indirectly the cause of the loss, your verdict should be for the plaintiff. The law does not inquire into the cause of a proximate cause. When the proximate cause of an effect has been ascertained, the law ceases to make further inquiry and ascribes the result exclusively to such cause. While the proximate cause of an effect frequently is and generally may be the nearest cause, yet mere distance in time or space is not the exclusive factor in the determination of the question whether or not a given cause is proximate or remote. Other elements are involved, any one of which may be of such character as to subordinate the element of distance. The proximate cause of an effect is the cause to which the effect is attributed by the rational judgment of mankind.

Your inquiry, therefore, in this case, should be whether or not the earthquake of April 18, 1906, was the predominating and operating cause of the fire which burned the property of the Richmond Coal Company. The question, as I have said, is not what cause was nearest in time or place, but what was the cause which set the other causes, if any there be, in operation. The causes, if any there be, which were merely incidents or instruments of a superior or controlling agency are not the responsible ones, though they may be nearer in time and place, and if you believe from all the evidence in this case that the earthquake caused the fire which spread to and burned the property of the plaintiff, it will be your duty to render a verdict in favor of the defendant insurance company and against the plaintiff coal company no matter how many buildings or blocks such fire may have burned through or consumed before it reached the plaintiff's property. The origin of the fire which destroyed the property in question may be shown by direct or circumstantial evidence, and in reaching your conclusion as to the cause of the fire which destroyed that property, you will bear in mind that the law does not require demonstration—that is, such a degree of proof, as excluding possibility of error, produces absolute certainty, because such proof is rarely possible; nor does it require proof beyond a reasonable doubt, as is the rule in criminal cases. Moral certainty only is re-

quired, or that degree of proof which produces conviction in an un- prejudiced mind. Therefore, while, as I shall hereafter state more particularly, it is for the defendant to prove that earthquake was directly or indirectly the cause of the destruction of plaintiff's prop- erty, it is not necessary that the defendant should show that plain- tiff's loss could not possibly have occurred from any other cause than from earthquake. If, taking the testimony as a whole, it has been shown that the fire or fires and plaintiff's loss or damage therefrom were either directly or indirectly caused by earthquake, then your ver- dict should be in favor of the defendant. It is not sufficient, however, that the evidence show merely that plaintiff's loss would not have oc- curred but for the earthquake; in order for defendant to prevail, it must appear by satisfactory evidence that plaintiff's loss was caus- ed by earthquake. The earthquake may have produced conditions but for which plaintiff's loss would not have occurred, such, for in- stance, as the destruction or disconnection of the city's water supply; but if you find, for instance, that the plaintiff's loss was directly caus- ed by fire, the peril insured against, and that that fire, and the loss resulting therefrom, was not directly or indirectly caused by earth- quake, then plaintiff is entitled to a verdict, notwithstanding it ap- pears that the earthquake produced conditions remotely contribut- ing to that loss.

If you find and believe from the evidence in this case that the earth- quake of April 18, 1906, caused directly or indirectly in the city and county of San Francisco a fire in the vicinity of Fourth and Natoma streets; or a fire in the vicinity of Third and Minna streets; or a fire in the vicinity of Third and Howard streets; or a fire in the vicin- ity of First and Mission streets; or a fire in the vicinity of Market and Fremont streets, in what has been testified to as Mack & Com- pany's drugstore; or a fire on Fremont street, between Howard and Mission streets, in what was known as the Martel Power Company's plant; or a fire at No. 117 Steuart street, in the place known as Alice's; or a fire at No. 48 Steuart street, between Market and Mission streets, in what was known as Brown's store; and that those fires, or any one or more of them so-caused, spread by flame, spark, or heat, and burn- ed uninterruptedly from building to building, or block to block, until they or any one or more of them reached and destroyed plaintiff's property located and situated on the northwest corner of Howard and Spear streets—then I charge you that it is your duty, and you must be governed by what the evidence shows, to return a verdict in favor of the defendant insurance company and against the plain- tiff coal company. If you find and believe from the evidence that the fires, or any one or more of the fires mentioned by the witnesses, or as to which testimony has been introduced, were caused directly or indirectly by the earthquake of April 18, 1906, and that such fire or fires thereafter spread to and burned uninterruptedly from building to building, or block to block, until it reached and destroyed the prop- erty of plaintiff, then, and in that case, I instruct you that your ver- dict should be in favor of the defendant.

In reaching your conclusion as to whether or not the fire by which

plaintiff's loss was brought about was caused by the earthquake of April 18, 1906, you must consider the evidence impartially and without favor towards plaintiff or bias towards the defendant. The defendant insurance company having contracted with the plaintiff, and the plaintiff by accepting the policy having agreed, that the company was not to be liable for loss by fire caused directly or indirectly by earthquake, the right of the company to set up by way of defense that the loss was so caused cannot be questioned. The single thing for your determination in this case, without regard to either of the parties, is the origin of the fires by which plaintiff's property was destroyed. If the evidence has established that the fires by which plaintiff's property was destroyed, no matter at what point, or from where they started, were caused by the earthquake of April 18, 1906, you must, without hesitation, render your verdict in favor of the defendant insurance company.

In arriving at a conclusion as to whether or not any fire testified to by any of the witnesses in this case was caused by the earthquake, your inquiry, as I have indicated, should be whether or not the earthquake was the predominating and operating or producing cause, whether or not such fire would have occurred had the earthquake not happened, and in so doing it will be your duty where a fire is not proven by direct evidence to have been caused by the earthquake, to consider all the surrounding facts and circumstances which are proven by the testimony in the case, such as the location and character of the building where it started, the effect of the earthquake upon such building, the nature of its occupancy, whether any gas, electric, coal oil or other lights were burning in it at the time of the shock; or whether at the time of the earthquake there was any stove or other confined fire, or other means which could cause fire in such building. Not only these facts should be considered, but also there should be kept in mind the large number of fires which started shortly after the earthquake compared with the usual number of fires at the time in the morning when those which are shown by the testimony to have started actually occurred, and whether or not there is any probable cause other than the earthquake for the starting of such fires. All these facts and circumstances should be considered, and in the light of all of them you will decide whether any fire not proven by direct evidence to have been started by the earthquake was or was not caused thereby. In this regard you are not permitted to indulge in conjecture or mere hearsay as to the origin of any fire shown to have occurred on the date in question or as to the course or spread of such fire, but in determining as to the origin of a fire, or the manner in which it was started and as to its course or spread and the property destroyed thereby, if any, your finding must in each instance be based upon the evidence in the case alone and wholly unaffected by anything you may have heard elsewhere.

The policy of insurance sued upon provides in effect that defendant will indemnify the plaintiff against direct loss or damage by fire ensuing upon explosion of any kind; and there is evidence in the case tending to show that immediately following the first or great earth-

quake shock of April 18, 1906, certain explosions or explosive sounds were heard, apparently emanating from the direction of the premises occupied by the drughouse of Mack & Company, referred to in the evidence, just about the time of or immediately preceding the discovery of the fire upon those premises. On this subject I instruct you that if you find that the fire originating on those premises ensued upon an explosion or explosions of any kind, and you also find that the fire was the one that destroyed the plaintiff's insured property, then your verdict should be for the plaintiff, unless you find that the destruction of such property was directly or indirectly caused by earthquake. If, as I have already explained to you, the earthquake was the proximate, efficient cause of the fire, the defendant will not be liable, even though the means by which the earthquake caused such fire was an explosion. In other words, if such explosion was caused directly or indirectly by and was a mere instrument of the earthquake, and the loss by a necessary or natural sequence was solely due to the earthquake, then your verdict should be for the defendant as to any loss caused by such fire.

The law imposes upon the party having the affirmative of any issue what is denominated the burden of proof. By that phrase is meant, in a civil case, such as this, no more than that the party holding the affirmative must produce, in support of an issue which he is called upon to prove, a preponderance of the evidence. In this case, as before indicated, the defendant holds the affirmative in proving its defense that the fire or fires that destroyed the plaintiff's property were caused directly or indirectly by earthquake, and upon that issue, therefore, the evidence must preponderate in the defendant's favor or it cannot prevail. By preponderance of evidence is meant that greater or superior weight of the evidence which satisfies your minds. Preponderance does not necessarily mean the greater number of witnesses; for you are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in your minds as against a less number or against a presumption or other evidence which does satisfy your minds. But in determining the question of preponderance you may and should take into consideration, not only the number of witnesses testifying to any fact or given state of facts for the one side or the other, but also the opportunities of the different witnesses for seeing, hearing, knowing, and remembering the facts to which they have testified, the probability or improbability of the truth of their statements, in the light of the other evidence; the relation or connection, if any has been shown between any of the witnesses and the parties to the suit; their interest or lack of interest, if any, in the result of the suit, and their conduct or demeanor while on the stand. The number of credible and disinterested witnesses testifying to any material fact or state of facts in dispute, for the one side or the other, is therefore a proper matter for the jury to consider, together with all the other circumstances in the case, in determining on which side the evidence predominates. The jury have no right to capriciously disregard the testimony of a larger number of witnesses, nor to refuse to give whatever effect in their judgment should be

attached naturally to the fact that the greater number have testified one way and the smaller number the other; but this fact should be given its due weight by the jury in determining where the greater strength of the evidence lies. While, as I have indicated, the testimony of a lesser number of witnesses to a given fact or state of facts may be taken by the jury in preference to that of a greater number, obviously this should not be done unless the jury can say, conscientiously and on their oaths, that, from all the facts and circumstances in the case, the testimony of the lesser number is more reasonable, more trustworthy, truthful, disinterested, and credible.

Evidence alone will sustain a verdict. You are not permitted in any instance, in reaching your verdict, to indulge in mere conjecture, surmise, or speculation as to the facts; but in so far as they have not been admitted, they must be established by satisfactory evidence, as I have indicated. And I should state to you, gentlemen, that in so far as facts have been admitted, of course, that is conclusive evidence of the existence of such facts and you need not inquire any further as to such. When a fact is admitted, that is taken as established for the purposes of the case. Under these principles, therefore, if you are unable to find, from a preponderance of the evidence, that the plaintiff's loss was caused directly or indirectly by earthquake, or if in your judgment the evidence is equally balanced upon that question, or if, after a careful consideration of all the evidence, you are unable to conclude, either from the facts proved or from proper inference from such facts, that the loss was caused directly or indirectly by earthquake, then your verdict should be for the plaintiff, for the reason, as I have stated, that the defendant must establish, by a preponderance of the evidence, the fact which is essential to a verdict in its favor. In this connection I should suggest to you that while in certain cases the law receives the evidence of men expert in certain lines as to their opinions derived from their knowledge of particular matters, the ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury, and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give a controlling effect to the opinion of scientific witnesses; in other words, the testimony of an expert, like that of any other witness, is to be received by you and given such weight as you think it is properly entitled to, but you are not bound or concluded by the testimony of any witness, expert or other.

You are the sole judges of the credibility of the witnesses; what the evidence establishes is a matter entirely for your consideration. It is your province to find the facts, but, as I have stated, it is the province of the court to state the law. And if it shall have happened during the course of the trial, or during this charge, that the court has made any remark or used any language from which you have received an impression as to its views upon the questions of fact, or as to the weight or credibility to be given to any witness, it is your duty to disregard such suggestion or impression unless found to accord with your own judgment, your own independent views, reached as a conclusion from your own examination of the evidence.

And in this connection, gentlemen of the jury, perhaps I might pertinently suggest to you, in view of the characteristics of much of the evidence in the case, that in passing upon the evidence of the witnesses you are to presume primarily that the witness is telling the truth; the law clothes him with that presumption. You are entitled, however, in determining whether that presumption is to be sustained, to regard the manner of the witness, as I have indicated, and the character of his testimony. Notwithstanding, however, that a witness may make upon the witness stand a statement which does not accord readily with your belief, that is not necessarily to discredit him unless you believe from his manner or from the other circumstances which have appeared in the case that the witness is willfully telling a falsehood. If a witness is merely telling what he believes to be true, and is simply mistaken as to the fact, you should not necessarily discredit him as to the balance of his evidence, excepting, of course, that it should make you more careful in weighing his evidence. There are certain things that have come by experience to be known in the law as subjects upon which the minds of men will differ, and honestly differ, so that a discrepancy between two or more witnesses upon such a subject is not regarded as necessarily casting discredit upon the testimony of the witness you do not fully credit. That has been very pertinently and strongly illustrated in this case as to the matter of time with reference to which most every witness upon the stand has testified as to what he did and what time he did it; what he saw and what time he saw it on the morning of this memorable occasion when this great disaster occurred in San Francisco, and during which the property that is now in suit was destroyed. Men's minds operating under a state of high excitement are not as capable of that cool and mathematical thought and measurement of the ordinary circumstances of time or place as they are under normal conditions. Men do not see things as they would under normal conditions; they may see things with the eye, but the mind is not directing the eye, and therefore the brain is not impressed with any such vision as the eye perhaps may have taken in; and therefore a witness will come upon the stand, and, under conditions which you think very remarkable, perhaps will say that he did not see such and such a thing, although a number of other witnesses similarly situated have testified that they did see them. Now, the fact is that that man may, as I have said, have seen them with his eye, but his mind has not seen them, and therefore he is truthfully telling you that he did not see them, because a man sees nothing the impression of which is not left upon his brain. And therefore I say that in passing upon the credibility of the different witnesses in this case you must use your good judgment and common sense and the experience that has come to all of us in our dealings with our fellow men in making up your minds as to whether the witnesses have been telling the truth; not only telling the truth, but how far they are correct in their statements. To my mind not one single witness has come upon this stand with the purpose or exhibited the inclination of telling other than fully and fairly what he believed to be the truth as to the facts about which he was

questioned, but, of course, some of them have made statements which have struck you, as they did me, with incredulity. You are simply to eliminate such statements that do not fall in with your good judgment, but you must give the balance of the testimony such credit and weight as you deem under all the circumstances it is entitled to. It occurred to me as proper to make these suggestions in view of the fact that with reference to almost every witness in the case statements were made as to the time when things occurred that were decidedly at variance with the statements of his fellow witnesses. You should understand that these things are not necessarily to discredit the entire testimony of a witness that you think is thus mistaken, for the reasons I have before indicated to you.

Now, gentlemen, there is another subject that should be called to your attention. I hardly think it necessary, but still suggestions have occurred in the argument which make it pertinent that the court should perhaps impress upon you that you are to sit in this case and judge of the rights of these parties absolutely impartially and free from any bias or prejudice whatsoever coming to your minds from any outside source whatsoever. If you have received impressions from publications in the press or from popular sentiments that you have heard expressed upon the streets as to the rights of either of the parties in this suit, those things are to be absolutely eliminated from your consideration. You are to take this case and determine it from the evidence that has been presented to you from the witness stand, and from that alone. It will be a reproach to justice unless you are governed absolutely and solely by the evidence in this case. It is one of the boasted privileges of our modern civilization that we have established enlightened systems of jurisprudence, and one of the jewels of our system is regarded as that of the trial by jury because it is believed that in certain classes of cases at least men of the general walks of life, not educated and versed in the subtleties and refinements of the law, are more capable of reaching just conclusions upon matters of fact than the mind of the trained jurist or lawyer, because they are not bound down and circumscribed by those rules which become imbedded in the mind of the educated lawyer, and which at times prevent him from giving that flexibility to his judgment of which the mind of the layman is capable for the very reason that the latter is entirely ignorant of those rules, and therefore is not in any wise influenced by them. Therefore it is that the experience of ages has demonstrated the value of the jury as an arm of the court in determining certain classes of questions, and, of course, that feature of our system can only remain with credit while juries continue to base their verdicts solely upon those things which they have a right under the law to consider.

Now, gentlemen of the jury, very little remains to be said. If your verdict in this case, under the principles which I have given you, should be in favor of the plaintiff, it will be substantially. in this form: We, the jury, find in favor of the plaintiff, and assess the damages against the defendant in the sum of blank dollars, and that blank, if you find in favor of the plaintiff, will be filled in by

the amount sued for—$19,955.84—with interest calculated thereon from the 15th day of August, 1906, at the legal rate of 7 per cent. because under the admissions in this case, as I have heretofore indicated to you, there is no question as to the amount plaintiff is entitled to recover, if you find that the plaintiff is entitled to recover. If your verdict should be in favor of the defendant, then its form will be: We, the jury, find in favor of the defendant.

You will bear in mind, gentlemen of the jury, that your verdict must be unanimous; you cannot, as under the state system, find a verdict by a less number than the entire 12.